FILED

12/07/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 12, 2022

**TIMOTHY ALLEN JOHNSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2014-B-1187     Cheryl Blackburn, Judge**

_____

**No. M2022-00037-CCA-R3-PC**

_____

Petitioner, Timothy Allen Johnson, appeals the denial of his post-conviction petition, arguing that the post-conviction court erred in finding that he received the effective assistance of counsel at trial.  Following our review of the entire record and the briefs of the parties, we affirm the judgment of the post-conviction court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee for the appellant, Timothy Allen Johnson.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; Megan M. King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

This case has a complex procedural history resulting from the intersection of two separate cases in which Petitioner was charged. He was originally indicted in case number 2012-B-1770, and charged with the sale of less than .5 grams of cocaine in a drug-free school zone, tampering with evidence, and evading arrest. Prior to trial, Petitioner entered a guilty plea to misdemeanor resisting arrest as charged in count three. Following a jury trial, Petitioner was found guilty of tampering with evidence as charged in count two, but a mistrial was declared as to the drug offense in count one based on a hung jury. The State then sought a superseding indictment charging Petitioner with one count of the sale of less than .5 grams of cocaine in a drug-free school zone and one count of the delivery of less than .5 grams of cocaine in a drug-free school zone. Count two was dismissed and after a jury trial, Petitioner was convicted as charged in count one of the sale of less than .5 grams of cocaine in a drug-free school zone. He was sentenced to twenty years with the requirement that twelve years be served at 100 percent in the Tennessee Department of Correction. *See* T.C.A. § 39-17-432(3)(c)(1) (requiring a defendant sentenced for a drug-free school zone violation to "serve at least the minimum sentence for the defendant's appropriate range of sentence"). This Court affirmed Petitioner's convictions on appeal. *State v. Timothy Allen Johnson*, No. M2015-01160-CCA-R3-CD, 2016 WL 3435589 (Tenn. Crim. App., at Nashville, April 19, 2016), *perm. app. denied* (Tenn. Oct. 19, 2016).

The facts of this case as summarized on direct appeal are as follows:

> Detective Michael Donaldson, a Metropolitan Nashville police officer, testified that he worked in an "undercover capacity" buying and selling drugs on the streets. On March 27, 2012, Detective Donaldson was assigned to the Crime Suppression Unit and was buying drugs from street level drug sellers. He received a list of citizen complaints about where drugs were being sold on the street. Detective Donaldson went to one area of complaints, at the corner of Wedgewood Avenue and Waverly Avenue in the Edgehill neighborhood. Detective Donaldson parked his vehicle at the intersection and began walking around the area. He saw a woman and two men standing by a tree, and as the woman walked away from the men, Detective Donaldson asked her if she knew where he could buy drugs. The woman turned around and pointed to the two men, and Detective Donaldson approached them, one of whom he identified as the Defendant. Detective Donaldson asked the Defendant in "street lingo" if he could buy $30 worth of crack cocaine from him. The Defendant replied that he did not have "any,

- 2 -

he was waiting to get his and that [Detective Donaldson] would have to come back."

Detective Donaldson walked away from the Defendant and then advised his partner that he needed to wait for the Defendant to get the drugs. Detective Donaldson subsequently went back over to the Defendant and asked if the Defendant had gotten the drugs yet, to which he replied that he had not. The Defendant told Detective Donaldson that he would "get it from another place." The Defendant walked across Wedgewood Avenue and directed Detective Donaldson to follow him. Once across the street the Defendant knocked on the door of a house, and someone opened the door. The Defendant spoke to that person and then walked back over to Detective Donaldson and said that he could not get any drugs from the person inside the house but that the Defendant knew another place to try. The Defendant and Detective Donaldson got into Detective Donaldson's undercover vehicle, driven by Detective Donaldson's partner, and drove to a nearby Shell gas station, located at the intersection of Lafayette Street and Lewis Street. Detective Donaldson testified that the gas station was close to Johnson Elementary School.

Once at the Shell gas station, Detective Donaldson gave the Defendant previously photocopied "buy money," and the Defendant exited the vehicle to get the drugs. The Defendant walked across Lewis Street and into a housing division; Detective Donaldson indicated the Defendant's route on a map displayed for the jury. He recalled that it was 9:15 or 9:30 p.m. Detective Donaldson clarified that the Defendant exited the vehicle with the buy money and disappeared from view, and neither Detective Donaldson nor his partner followed the Defendant. Approximately five minutes later, the Defendant returned to the vehicle and appeared nervous because uniformed police officers were on foot patrol close by. Detective Donaldson stated that the uniformed officers had no knowledge of the undercover operation. The Defendant got into the vehicle and said, "Let's go." Detective Donaldson asked for the drugs or his money back. The Defendant insisted that they drive away. As Detective Donaldson drove the vehicle away from the gas station, the Defendant showed him a large bag. The bag was a "much larger bag than you would get for $30 worth of cocaine" and Detective Donaldson asked if "all of it" was for him. The Defendant said, "no, the rest of it is mine." The Defendant untied the bag and "broke off

a piece [of crack cocaine] the size of a pencil eraser and handed [Detective Donaldson] that piece. . . ." Detective Donaldson stated that the Defendant gave the drugs to him "approximately a block" from Shell gas station at Worth Street. Detective Donaldson then secured the sold crack cocaine, completing the transaction, and gave the "takedown signal" to nearby police officers. Detective Donaldson continued to engage the Defendant in conversation hoping to distract him.

Uniformed officers responded to the takedown signal, and the Defendant started to eat the remaining drugs in the bag. Detective Donaldson wrestled with the Defendant in an attempt to stop him from eating all the remaining drugs but was unable to stop the Defendant from swallowing them. However, Detective Donaldson still had the piece of crack cocaine he had purchased from the Defendant. Officer Bill Loucks then attempted to remove the Defendant from the vehicle, and the Defendant punched and kicked him to avoid being handcuffed. "After considerable wrestling and fighting," the Defendant was detained, at which point Detective Donaldson exited his vehicle and conducted a field test on the drugs purchased from the Defendant. The drugs tested positive for cocaine base and were placed in an evidence bag. Detective Donaldson identified in court the drugs in the evidence bag.

Detective Donaldson again identified on a map where the Shell gas station was located. He stated that the Police Department had done "numerous" undercover drug purchases at "this location" and had determined that it was located in a "drug free school zone." Detective Donaldson recalled that the Defendant, when he returned to the vehicle with drugs, did not have the buy money on his person, as determined by a search of his person after he was detained. The buy money was not recovered.

On cross-examination, Detective Donaldson clarified that the complaint about drug activity did not identify the Defendant but simply an address at an intersection. He agreed that he was not investigating the Defendant in particular. Detective Donaldson stated that he stayed in the vehicle at the Shell station, instead of following the Defendant into the housing division, and he did not see the Defendant acquire the drugs.

Detective Brittany Shoesmith testified that she worked for the Metropolitan Nashville Police Department and was partnered with Detective Donaldson on March 27, 2012, working in an undercover capacity. Detective Shoesmith drove the undercover vehicle with Detective Donaldson as a passenger to the Edgehill neighborhood. She recalled that Detective Donaldson got out of the vehicle and came back a short while later to report that he had met an individual to buy drugs from but that the individual needed to get more drugs from his supplier. After several attempts to find drugs, the Defendant and Detective Donaldson both got into the vehicle and the three of them drove to the Shell gas station on Lafayette Street where the Defendant said he would meet with his supplier and get more drugs. At the gas station, the Defendant exited the vehicle and was gone for no more than ten minutes. When he returned, he got back into the car and told Detective Shoesmith to drive away. Detective Shoesmith began driving the vehicle on Lafayette Street towards downtown. The Defendant pulled out a plastic bag containing what Detective Shoesmith described as "crack cocaine." The Defendant "broke off a piece and gave it to Detective Donaldson." The "takedown word" was then given and Detective Shoesmith stopped the vehicle on Lafayette Street and the Defendant was taken into custody.

On cross-examination, Detective Shoesmith clarified that she stopped the vehicle after Detective Donaldson had received the drugs from the Defendant. She agreed that she swore out arrest warrants in this case. She could not recall the address written on the warrants or exactly where the vehicle stopped. Detective Shoesmith agreed that if the warrants listed 1035 1st Avenue North, that was an accurate address for where she stopped the vehicle.

Detective Bill Loucks testified that he was working on the narcotics unit on March 27, 2012, and that he provided "cover" for the undercover officers and monitored their interactions. Once the takedown signal was given, Detective Loucks stopped the vehicle driven by Detective Shoesmith and took the seller, the Defendant, into custody. He was not involved in the drug transaction until the takedown signal was given.

Special Agent Denotria Patterson testified that she worked for the Tennessee Bureau of Investigation ("TBI") as a forensic scientist. Agent Patterson was admitted as an expert in the field of forensic

chemistry. Agent Patterson tested the drugs that the Defendant sold to Detective Donaldson in the TBI laboratory. She stated that the drugs tested positive for cocaine base and weighed .20 grams. She testified that cocaine was a Schedule II substance.

David Kline testified that he worked at the Metropolitan Nashville Planning Department. Mr. Kline testified on a map the intersection of Lafayette Street and Lewis Street, where the [S]hell gas station was located; the map was admitted into evidence. He also identified where the property lines for Napier School and a 1,000 foot "buffer" zone around the school. He testified that the Shell gas station at the intersection of Lafayette Street and Lewis Street was within the 1,000 foot buffer zone surrounding Napier School.

On cross-examination, Mr. Kline stated that 1st Avenue North was also called Hermitage Avenue. He indicated where the street was on the map but could not identify the specific location of 1035 1st Avenue North.

Based upon this evidence, the jury convicted the Defendant of sale of less than .5 grams of cocaine within a drug-free school zone. The jury foreperson stated that the jury had not deliberated as to the delivery of less than .5 grams of cocaine within a drug-free school zone charge; the charge was dismissed.

*Id*. at *2-5.

While the direct appeal was pending in this case, Petitioner filed for post-conviction relief, from his conviction of tampering with evidence in case number 2012-B-1770. Then, on July 8, 2016, Petitioner filed a *pro se* petition for post-conviction relief in this case, which the trial court dismissed without prejudice as having been prematurely filed because the time period for filing a Rule 11 appeal had not expired. On April 1, 2019, Petitioner untimely refiled his petition for post-conviction relief. However, the post-conviction court in reviewing the two related files found that Petitioner had filed an earlier *pro se* document raising post-conviction claims in this case. In a written order, the post-conviction court held that because Petitioner's timely filed document was miscaptioned and filed under a different related case number, due process required tolling of the one-year post-conviction statute of limitations.

Post-conviction counsel was appointed, and an amended petition was filed, claiming that trial counsel was ineffective for failing to argue the lesser-included offense of facilitation and for failing to raise an entrapment defense. Following a hearing, the lower

court denied the post-conviction petition in a written order filed December 15, 2021. Petitioner filed a timely notice of appeal on January 10, 2022.[1]

*Post-Conviction Hearing*

At the post-conviction hearing, Petitioner testified that trial counsel provided him with a copy of discovery in the case, but did not meet with him where he was housed pending trial. He further complained that trial counsel failed to explain the significance of the school zone aspect of the case and that it could enhance punishment if convicted. He stated that trial counsel "explained some things to me, but I would ask him some things and to, you know, to speak up more for me, but he never responded back on what I asked him."

Petitioner testified that trial counsel did not discuss defense strategy with him. Petitioner asked about an entrapment defense, and trial counsel never "really responded back to that." Petitioner admitted that his attorney in the first trial did not discuss or recommend entrapment as trial strategy either. Regarding the charged offense, Petitioner stated that undercover agents approached him while he was outside his mother's house and asked to purchase drugs. He told them he did not have drugs, but when the agents came back later, Petitioner took them across the street first, and when he could not get drugs there, they got "in his car with him and I took [them] across town and, you know, I was able to get [them] some then." Petitioner did not have an agreement to receive either drugs or money in return for his help. Had it not been for the police coming to him and asking him for drugs, he would not have taken them to find drugs.

Further, Petitioner testified that he received a plea offer from the State on the day of trial, but he could not recall if any other pre-trial offers had been extended. Petitioner stated that had he been extended an offer, he would have considered it.

Trial counsel testified that he had been practicing law in Tennessee since the spring of 2012. He had experience handling criminal cases at all stages of proceedings, from general sessions, and criminal trials, to appeals, but he had not represented anyone in a post-conviction matter at the time of Petitioner's trial. He met with Petitioner in court on the day he was appointed to represent him and received discovery from prior counsel. He had Petitioner scheduled to come to court "about every month" to facilitate meeting with his client. He was also able to communicate via video conference with Petitioner twice while he was incarcerated, but he did not meet with Petitioner at the facility where he was housed. Trial counsel also went to the crime scene twice to get "the lay of the land and see

---

[1] Petitioner also filed a petition for a writ of habeas corpus in federal court. The U.S. District Court for the Middle District of Tennessee found that all of the claims lacked merit and denied the petition. *Timothy Johnson v. Washburn*, No. 3:17-CV-01278, 2018 WL 4491130, at *1-2 (M.D. Tenn. Sept. 19, 2018).

if police officers could have lost [Petitioner] or if they were making it up or anything like that." He also had the benefit of prior counsel's cross-examination for his trial.

Trial counsel recalled discussing the case with Petitioner with an emphasis on "how [] we get this to simple possession." And they both put an emphasis on the "absence of buy money in evidence" as well as the lack of eye-witnesses to a sale, exchange, or delivery. According to trial counsel, they did not spend much time discussing facilitation because "it still carried more time than [Petitioner] was willing to accept."

Regarding an entrapment defense, trial counsel stated:

> One of the things that we did talk about, and I'm not sure if [Petitioner] brought this up, but we did talk about the possibility of like an entrapment defense, which I think he got his idea of entrapment more from the movies than the law books, because he was a little bit more of a go-getter on that idea, although it subsided. And the reason is that it's just such a hard defense to employ because you're risking so much. You're risking, basically, for me to feel comfortable about an entrapment defense, I would have to say [Petitioner] absolutely did everything the [S]tate said he did, just to win the jury over, that the next thing I'm going to say is accurate. And the problem that we could never overcome on entrapment would have been he didn't know they were the police. You know, it would've been different if they'd said we're the police, go make this deal, and now you're in possession. We would've felt pretty comfortable with that defense. But he didn't know they were the police until he had committed the crime.
>
> But we did, and I think the transcript will reflect it, I know that it came up a couple of times that we did try to get as close to an entrapment defense as we could without requesting any type of instruction or announcing that that was our defense, hoping that maybe one of the jurors just kind of thought this was not fair.

On cross-examination, trial counsel testified that this strategy was "mutually agreed upon." He made a strategic decision to put "our eggs in the basket for simple possession" instead of the "shotgun approach" of "if you don't believe me for this, believe me for this." He admitted that in theory, he could have argued facilitation, simple possession and entrapment, but "[e]ntrapment, I think, would have taken a little bit more. It wouldn't have been impossible. I just don't think that the facts allow for it. But I could have given the notice if that's what you're asking, and argued it, yes."

- 8 -

Trial counsel testified that on the morning of trial, he was feeling pressure to make efforts to settle the case to avoid the enhanced punishment. The State made an offer for Petitioner to plead guilty to facilitation as a Range III offender with a sentencing hearing wherein the trial court would impose a sentence between twelve and fifteen years. Trial counsel advised the court of the offer, and the court gave them "as much time as they needed" to discuss the offer. Trial counsel discussed the offer with Petitioner's daughter so she could encourage Petitioner to accept it. Trial counsel advised Petitioner that he felt "pretty confident that this will be a better result than we're about to get" and that if Petitioner accepted responsibility he might get the low end of the sentence. Ultimately, Petitioner rejected the offer based on the lengthy sentence range. Trial counsel understood that simple possession would have been the only offer Petitioner would have accepted.

Trial counsel also recalled discussing the drug-free school zone sentence enhancement with Petitioner. He specifically recalled a time where he made an error on some paperwork he had provided to Petitioner regarding Petitioner's charges and punishment. When reviewing that document with Petitioner, he recognized the error, discussed the error which included the sentence enhancement, and requested Petitioner return the document so he could correct it. Petitioner refused to return the document. Trial counsel also recalled discussing the enhancement with Petitioner when reviewing the potential plea offer.

Following the hearing, the post-conviction court entered a written order with findings of fact and conclusions of law and denied Petitioner's request for post-conviction relief. The post-conviction court credited the testimony of trial counsel finding that, "[n]othing in the record indicates that trial counsel failed to meet with the Petitioner and keep him informed of the proceedings." The court found that Petitioner "failed to meet his burden of showing by clear and convincing evidence that trial counsel was ineffective in his investigation or communication with Petitioner nor has he established any prejudice resulting from the alleged deficiency." Regarding Petitioner's claim that trial counsel failed to pursue an entrapment defense, the post-conviction court credited trial counsel's testimony that he made a reasonably based strategic decision not to raise entrapment as a defense, finding that "an entrapment defense would not have been viable given [Petitioner's] prior convictions." The court also found that "Petitioner's convictions demonstrate that he had a predisposition for engaging in the sale of illegal substances."

The post-conviction court denied post-conviction relief concerning each claim raised by Petitioner, concluding that there was no deficient performance nor prejudice. It is from this denial, that Petitioner now appeals.

**ANALYSIS**

Petitioner contends that the post-conviction court erred in concluding that he received the effective assistance of counsel when trial counsel made a strategic decision to seek a conviction on a lesser-included offense rather than pursuing an entrapment defense. The State responds that the post-conviction court properly denied Petitioner's claim because trial counsel and Petitioner made a joint strategic decision not to raise entrapment and further, that because the strategic decision was reasonable, Petitioner cannot show he was deprived of effective assistance of counsel. We agree with the State.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697. Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)).

Review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006). Deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *Cooper v. State,* 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome" of the trial. *Id.* The stronger the proof of guilt presented at trial, the more difficult it is to prove the prejudice prong of *Strickland*. When proof of guilt is overwhelming, proving prejudice is exceedingly difficult. *See Proctor v. State*, 868 S.W.2d 669, 673 (Tenn. Crim. App. 1992); *Randy Bray v. State*, No. M2011-00665-CCA-R3-PC, 2012 WL 1895948, at *6 (Tenn. Crim. App. May 23, 2012) (finding

that, in light of overwhelming evidence, petitioner could not demonstrate prejudice); *Raymond E. McNeil v. State*, No. M2010-00671-CCA-R3-PC, 2011 WL 704452, at *6 (Tenn. Crim. App. Mar. 1, 2011) (finding that overwhelming evidence of guilt precluded showing of prejudice from admission of item of evidence at trial).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). The factual findings of the post-conviction court are binding on an appellate court unless the evidence in the record preponderates against those findings. *Dellinger*, 279 S.W.3d at 294. The post-conviction court's application of law to its factual findings is reviewed de novo with no presumption of correctness. *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011). A claim of ineffective assistance of counsel presents a mixed question of law and fact that is subject to de novo review with a presumption of correctness given only to the post-conviction court's findings of fact. *Id.*

In his *pro se* petition for post-conviction relief filed April 1, 2019, Petitioner raised several claims for which he did not provide proof or argue at the evidentiary hearing, nor were such claims raised on appeal. In the amended petition for post-conviction relief, Petitioner claimed that he was denied effective assistance of counsel because trial counsel "failed to explain to Petitioner the significance of 'facilitation' in the Drug Free School Zone law" and further failed to emphasize and argue facilitation to the jury at trial. While the post-conviction court addressed this issue, Petitioner did not raise it in his brief on appeal and accordingly, we will not address same.

While Petitioner does argue in his brief that trial counsel provided deficient performance by failing to adequately communicate with Petitioner to develop a proper defense strategy and viable defense theory, as the post-conviction court noted in its order, this issue was not raised in the original or amended post-conviction petition. However, because the proof at the post-conviction hearing as well as the order of the post-conviction court addressed this issue, we will review the issue. The post-conviction court accredited trial counsel's testimony that he met with Petitioner "seven or eight times," including meetings where trial counsel had Petitioner transported to court to meet, as well as video conference meetings. The post-conviction court also noted trial counsel's testimony that he made a "last ditch effort" on the morning of trial to get a plea offer in order to avoid the drug-free school zone enhanced punishment. He did in fact secure an offer of a plea to the lesser-included offense of facilitation which was rejected by Petitioner due to the length of the sentence. Petitioner indicated that he would only accept a plea to simple possession and accordingly, the defense strategy was to convince the jury that Petitioner used drugs but did not sell them. Specifically, the post-conviction court found that, "[n]othing in the record indicates that trial counsel failed to meet with the Petitioner and keep him informed of the proceedings." Accordingly, the post-conviction court found that Petitioner "failed

- 11 -

to meet his burden of showing by clear and convincing evidence that trial counsel was ineffective in his investigation or communication with Petitioner nor has he established any prejudice resulting from the alleged deficiency." The evidence does not preponderate against the post-conviction court's credibility findings. Petitioner is not entitled to relief.

Petitioner further alleges that trial counsel failed to raise the affirmative entrapment defense. Petitioner testified that he only went to look for drugs because the police approached him to purchase drugs. The post-conviction court accredited trial counsel's testimony that he did discuss an entrapment defense with Petitioner, but that it would have been difficult to employ because of the risk of having to admit Petitioner did everything alleged by the State. Trial counsel was further concerned that he could not overcome the fact that Petitioner did not know the drug purchasers were police. The post-conviction court found that trial counsel made a reasonable based strategic decision not to raise an entrapment defense. Where there is reasonable trial strategy and adequate preparation for the case, we will not grant relief based on a sound, yet unsuccessful tactical decision. *See Granderson*, 197 S.W.3d at 782; *see also Cooper*, 847 S.W.2d at 521.

Further, the post-conviction court found that Petitioner could not prove prejudice from the lack of an entrapment defense because there is not a reasonable probability that it would have been successful. Entrapment is defined as follows:

> It is a defense to prosecution that law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so. If a defendant intends to rely on the defense of entrapment, the defendant shall give to the district attorney general a notice comparable to that required for an insanity defense under Rule 12.2 of the Tennessee Rules of Criminal Procedure.

T.C.A. § 39-11-505.

Entrapment as described by Tenn. Code. Ann. § 39-11-505, requires the jury to "focus on the subjective intent of the defendant to determine whether the defendant was predisposed to commit the criminal act, with law enforcement officials furnishing only the opportunity, or whether the defendant was an innocent person induced by police into committing the criminal offense." *State v. Shuck*, 953 S.W.2d 662, 666 (Tenn. 1997).

As noted by the post-conviction court, out of Petitioner's eighteen prior convictions, three of them were felonies involving the sale of drugs. Additionally, at trial, the undercover detective testified that while he was not investigating Petitioner specifically, he investigated complaints of drug sales in the area where he encountered Petitioner and

he was directed to Petitioner in response to an inquiry about purchasing drugs. Based on Petitioner's history of drug-related convictions and the circumstances of the offense, it is not likely that an entrapment defense would have been successful. Accordingly, the lack of employment of the affirmative defense cannot be prejudicial. The prejudice prong of the test cannot be satisfied. *Strickland*, 466 U.S. at 694.

The evidence does not preponderate against the post-conviction court's credibility findings, and as such, we properly defer to those credibility findings. Petitioner has not proven deficiency by clear and convincing evidence, nor has he shown that he was prejudiced by trial counsel's reasonably based strategic decisions. Petitioner has failed to prove that he received the ineffective assistance of counsel.

## CONCLUSION

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JILL BARTEE AYERS, JUDGE